In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00212-CR


______________________________




JESS WILLARD MATTOX, SR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 19720




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



 Jess Willard Mattox, Sr., appeals from his conviction by a jury for the offense of aggravated
sexual assault on a child. The jury assessed his punishment at sixty years' imprisonment. Mattox
contends that the admission of the testimony of C.H. and Donetta Britt at the guilt/innocence phase
of the trial about Mattox's prior bad sexual acts was reversible error and that the trial court abused
its discretion by refusing to permit him to reopen his case after closing. 

 Mattox was indicted for having sex with a minor girl. The complainant, S.B., testified that,
on two consecutive days while she was home sick, Mattox (her stepfather) came home around noon,
ordered her to remove her clothes, and had sexual intercourse with her. There was no objective
evidence of the crime. After making the allegation, S.B. moved in with Edith Coker. Coker testified
S.B. recanted her story, and a letter written by Michelle Hodge was introduced into evidence, which
also stated S.B. had recanted her allegation. 

 During the presentation of the State's case, the State introduced testimony from C.H., a minor
girl and friend of S.B., that Mattox had attempted to talk her into, or pay her to engage in sex. After
the defense presented its case, Britt testified as a rebuttal witness (1) that, several years earlier, while
she was a minor, Mattox and several other men had sex with her. 

 Mattox argues that the trial court committed reversible error by admitting evidence of
extraneous offenses. We first address the admission of the testimony of C.H. The admission of
extraneous-offense evidence is reviewed under an abuse of discretion standard. Rankin v. State, 974
S.W.2d 707, 718 (Tex. Crim. App. 1996) (op. on reh'g). If the trial court admits the evidence in light
of the factors enunciated in Montgomery v. State, 810 S.W.2d 372 (Tex. Crim. App. 1990), and the
court's decision to admit the evidence is "within the zone of reasonable disagreement," the trial
court's decision will be upheld. Rankin, 974 S.W.2d at 718.

 C.H. initially testified about an incident where Mattox had come into a bedroom with her and
S.B. and asked them both to show him their breasts, and that S.B. did, but she did not. Mattox's
counsel then asked to present a motion outside the presence of the jury. The trial court excused the
jury, and counsel (1) asked for a mistrial because of her allegations about Mattox's actions toward
her, and then (2) argued that the evidence was more prejudicial than probative. The
objection/motion was overruled. 

 Shortly thereafter, the State asked C.H. whether there were any other instances in which
Mattox took inappropriate actions in the presence of her and the complainant. Counsel objected at
that point based on improper character evidence, and the objection was overruled. At that point, no
questions had been asked that would necessarily implicate improper character evidence, and thus the
trial court correctly overruled the objection. 

 The State then continued to question C.H., and in response to one of his questions about what
had happened while C.H. and the complainant were together with Mattox, she described a scene in
the complainant's bedroom where Mattox asked her for sexual favors in return for cigarettes and
money. Mattox did not object to that testimony. 

 After that exposition ended, the State then ask C.H. about another incident where Mattox had
driven her and the complainant to a lake. After the question was asked, and in the midst of the
answer, counsel objected because the testimony would constitute improper character evidence. The
objection was overruled, and C.H. completed her testimony by explaining how Mattox had again
asked her for sexual favors. The State referred to this testimony in its closing argument.

 Relevant evidence of a person's bad character is generally not admissible for the purpose of
showing that he or she acted in conformity with his or her character. Robbins v. State, 88 S.W.3d
256, 259-60 (Tex. Crim. App. 2002); Montgomery, 810 S.W.2d at 386-88 (op. on reh'g). In applying
the Texas Rules of Evidence, however, the Texas Court of Criminal Appeals has also held that the
evidence may be admissible when it is shown to be relevant to a noncharacter conformity issue of
consequence in the case, such as establishing intent or rebutting a defensive theory. Robbins, 88
S.W.3d at 259; Montgomery, 810 S.W.2d at 387-88. (2)

 A trial court is in the best position to decide these admissibility questions, and appellate
courts therefore review its decision under an abuse of discretion standard. Montgomery, 810 S.W.2d
at 391. This standard requires an appellate court to uphold a trial court's admissibility decision when
that decision is within the zone of reasonable disagreement. See id. 

 In a number of cases, evidence about extraneous bad acts or offenses allegedly committed
by an accused has been held admissible to refute defensive theories raised by the accused. Wheeler
v. State, 67 S.W.3d 879, 886-87 & n.18 (Tex. Crim. App. 2002) (noting that "[e]vidence of
extraneous offenses committed by the accused has been held admissible . . . to refute a defensive
theory raised by the accused") (quoting Albrecht v. State, 486 S.W.2d 97, 101 (Tex. Crim. App.
1972); and referencing Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988) ("[p]robably
the most common situation which gives rise to the admission of extraneous offenses is in rebuttal
of a defensive theory")); see also Rodriguez v. State, No. 290-01, 2003 WL 1534250, at *11 (Tex.
Crim. App. Mar. 26, 2003) (Myers, J., dissenting).

 From the opening statements and throughout the testimony, Mattox's sole defensive theory
was that the complainant was not telling the truth about any sexual activities between them. The
reason suggested for her alleged lies was that she was angry about his version of parental discipline
and wanted to move in order to live with her biological father in South Carolina. Clearly, C.H.'s
testimony about the acts she observed between Mattox and S.B. were admissible to show that the
acts occurred. 

 C.H.'s testimony that Mattox had attempted to pay her to engage in similar acts and had
attempted on one occasion to unbutton her pants while she was in the complainant's bedroom are a
different issue. The State takes the position that this testimony tends to refute Mattox's defensive
argument that S.B. had fabricated her testimony.

 In reviewing the admissibility of this evidence, we are confronted by opinions that have
continually narrowed the scope of the rule and thereby broadened the range of evidence found to be
admissible. In Wheeler, in reviewing testimony by another minor girl, the Court found that her
testimony regarding an extraneous offense of sexual touching near other people was admissible to
rebut a specified defensive theory that Wheeler did not have opportunity to make such contact with
the alleged victim because he was never alone with her and the acts allegedly occurred while other
persons were around. Wheeler, 67 S.W.3d at 885. The Texas Court of Criminal Appeals also stated
that the evidence was admissible to rebut a "frame-up" theory by showing similar acts in a situation
involving neither money nor revenge as possible motives for her testimony. Id. at 887. (3)

 This same defensive theory (lack of opportunity) was also used to validate the admission of
extraneous offenses in Powell v. State, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001). In that case,
the court also found that it was acceptable to look to the opening statement by defense counsel to
glean the defensive theory and that evidence by other witnesses about alleged extraneous offenses
committed against them while in the company of other people was admissible to refute his argument
that he could not have committed the crime-because other people were always around. Reversing
Powell v. State, No. 12-98-00049, 2000 WL 760988 (Tex. App.-Tyler May 31, 2000, op. on reh'g)
(not designated for publication).

 The question before this Court is whether there is any viable, specific, defensive theory that
this testimony was relevant to rebut-besides its relevance to show that Mattox acted in conformity
with his (bad) character. In Wheeler, the court held that one of its reasons for finding the testimony
admissible was that the complainant had been accused of fabricating the story in a conspiracy
designed to attempt to obtain money. Wheeler, 67 S.W.3d at 887. Therefore, the court reasoned,
the extraneous-offense testimony tended to contradict that theory by showing that other young girls
with no such motives had been similarly treated by the defendant.

 In this case, the defensive theory was that S.B. had concocted the story in an attempt to create
a situation where she could join her birth father in another state. If the testimony of C.H. rebuts a
specific defensive theory, such evidence of similar acts was admissible in order to show that, as in
Wheeler, other young girls with no such motive had been similarly treated. In making this
determination, we review the evidence presented regarding the defensive theory.

 In the opening statement, Mattox introduced the theme, "she wanted to live with him [her
birth father] because she had a freer lifestyle, and [he] let her do things she didn't get to do around
here." This continued to be developed with witness Eddie Waggoner, who was asked, "How about
if your mother thought that your real dad was a low down bad guy and he moved to another state and
you wanted to get back with him, . . . ?" In questioning S.B., he asked, "Did [your birth father] ever
talk to you about breaking up the family so that he could remarry [S.B.'s mother]?" Suzette Williams
testified that S.B. had said she was going to get the defendant in trouble by saying that he molested
her and that she wanted Williams to lie for her. S.B.'s aunt testified that S.B. had said she was lying,
that S.B. was just mad at Jess, and that S.B. was saying this to get even because of him being so strict
on her she wanted to live with her real dad. S.B.'s mother testified that S.B. told her that Jess did
not do anything and that she was mad at him for "interfering in her father's relationship." Her mother
also testified that S.B. had made up the lie because S.B. wanted to make her mother mad enough to
let her go to South Carolina. Mattox testified that S.B. said if he "didn't get off of her back that she
was going to go up and make the report that I was molesting her, . . . ." "I think that wanting to go
up to be with her real father is motive enough." 

 The primary defense to this case was that S.B. was lying and her motivation was to live with
her biological father. Mattox offered evidence on this issue from the child's mother and aunt. 
Additionally, three other witnesses were questioned on this subject, including the child. Mattox also
personally presented such evidence in his defense. Under these unusual circumstances, and applying
the requisite abuse of discretion analysis, we conclude the trial court's decision to admit the evidence
was within the zone of reasonable disagreement. Accordingly, error has not been shown. 

 Mattox also argues on appeal that, under Texas Rule of Evidence 403, the evidence was
unfairly prejudicial. See Tex. R. Evid. 403. However, except for the one instance set out
specifically above, he did not make that argument at trial. In connection with the shirt-raising
incident, the testimony was merely a part of the entire transaction and, as such, although it was
obviously prejudicial, we perceive no reason that it would be unfairly prejudicial. We therefore
conclude the trial court did not abuse its discretion by admitting the testimony.

 We cannot consider the other contentions in connection with the Rule 403 balancing test
because that complaint was not brought to the trial court's attention by a timely and proper objection
and, thus, the claimed error has not been preserved for our review. See Santellan v. State, 939
S.W.2d 155, 173 (Tex. Crim. App. 1997); Montgomery, 810 S.W.2d at 389. 

Britt's testimony

 Mattox also complains that the trial court abused its discretion by admitting the previously
described testimony of Donetta Britt in rebuttal. The sole objection made to her testimony was
"Objection, improper character, and relevance." The objection was overruled. As discussed above,
this testimony was admissible to rebut Mattox's defensive theory that the complainant had fabricated
her accusations so she could live with her biological father. 

Reopening the case

 Mattox finally contends the trial court erred by refusing to permit him to reopen his case to
present more evidence. After both sides had rested and closed, Mattox asked the trial court to allow
him to reopen his case:

 [Mattox's Counsel]: Your Honor, we would ask to reopen.


 THE COURT: Tell me about it.


 [Mattox's Counsel:] We have five witnesses, four of them dealing
with this Britt lady, and one is dealing with an incident that [S.B.] had said she was
going to run away and escape, and we were going to talk about that she had a plan
and to go toward her ability to form a plan. A lot of the state's experts said she
couldn't do that.


 . . . .


 THE COURT: Do I understand the state's objecting to this?


 [Prosecutor]: We are objecting strenuously, Your Honor.


 THE COURT: I'm going to sustain your objection and deny your
request.


 [Mattox's Counsel]: We take exception.


 . . . .


 [Mattox's Counsel]: Your Honor, I want to reurge the motion to open. 
One of the witnesses is going to testify how he was dressed when he went across to
get his sandwich at lunch on February 1st and 2nd.


 We review a trial court's refusal to allow a party to reopen its case-in-chief for abuse of
discretion. See generally Peek v. State, 106 S.W.3d 72, 72, 75 (Tex. Crim. App. 2003). A trial court 
must reopen a case under Article 36.02 of the Texas Code of Criminal Procedure "only if the
proffered evidence is 'necessary to a due administration of justice.'" Id. at 79 (quoting Tex. Code
Crim. Proc. Ann. art. 36.02 (Vernon 1981)). The Texas Court of Criminal Appeals recently
explained "due administration of justice" means the evidence sought to be introduced must be more
than merely relevant: "a judge should reopen the case if the evidence would materially change the
case in the proponent's favor." Peek, 106 S.W.3d at 79. 

 In the case before us, the record does not demonstrate the evidence sought to be introduced
during a reopening of Mattox's case would materially change the case in his favor. Under these facts,
Mattox has not shown the trial court abused its discretion by denying his motion to reopen.

 We affirm the trial court's judgment.




 Jack Carter

 Justice


Date Submitted: June 20, 2003

Date Decided: July 18, 2003


Do Not Publish
1. A short hearing outside the presence of the jury was held with Britt, during which her
testimony was set out and briefly discussed. The trial court at that time sustained Mattox's objections
to her testimony, but stated it might revisit the issue later, and then allowed the testimony as rebuttal.
2. The evidence must have relevance apart from character conformity, i.e., it must make more
or less probable an elemental fact or fact that inferentially leads to an elemental fact or tends to
disprove in the same way. Examples are to prove motive, opportunity, intent, preparation, blame,
knowledge, identity, or absence of mistake or accident. Montgomery v. State, 810 S.W.2d 372, 386-87 (Tex. Crim. App. 1990) (op. on reh'g).
3. Similarly, this Court has recently held that extraneous-offense evidence was admissible in
a child sexual assault case when the defense was a lack of opportunity to commit the offense and all
of the defendant's family testified they never saw the defendant do anything unusual with the
complainant. Abshire v. State, 62 S.W.3d 857, 860 (Tex. App.-Texarkana 2001, pet. ref'd).



in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-039-CR%20Burnham%20v.%20State%20Op.%20on%20Reh%27g%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00039-CR

                                                ______________________________

 

 

                              CALVIN WAYNE BURNHAM,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 123rd
Judicial District Court

                                                             Panola County, Texas

                                                       Trial Court
No. 2005-C-0002

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                      MEMORANDUM OPINION

 

            Calvin Wayne
Burnham appeals from his convictions by the trial court on four charges of aggravated
sexual assault of a child and four charges of indecency with a child.  Burnham has filed a single brief, in which he
raises issues common to all of his appeals.[1]  He argues that the trial court committed
reversible error in considering evidence from a previous revocation hearing
when granting the States second amended motion to adjudicate guilt and in
admitting the results of a polygraph examination.  Burnham also complains that the evidence was
insufficient to establish that he violated any conditions of his community
supervision. 

            We addressed
these issues in detail in our opinion of this date on Burnhams appeal in cause
number 06-10-00038-CR.  For the reasons
stated therein, we likewise conclude that reversible error has not been shown
in this case.

            We affirm
the trial courts judgment.

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date Submitted:          December
14, 2010

Date Decided:             December
15, 2010

 

Do Not Publish           

 

 

 

 

 

OPINION ON REHEARING

            In the
above-captioned case, we affirmed Calvin Wayne Burnhams conviction of four
counts of aggravated sexual assault and four counts of indecency with a child,
his stepdaughter.  Burnham has filed a
single motion for rehearing in all of his cases asking that this Court rehear
the matter.[2]  Specifically, he alleges that the State
violated Article 42.12, Section 21(b) of the Texas Code of Criminal Procedure
in amending its motion to adjudicate guilt after the commencement of taking
evidence at the hearing.   Tex.
Code Crim. Proc. Ann. art. 42.12, § 21(b) (Vernon Supp.
2010).  

            We addressed
these issues in detail in our opinion on rehearing of this date on Burnhams
appeal in cause number 06-10-00038-CR. 
For the reasons stated therein, we likewise conclude that Burnhams
complaint on rehearing was not preserved for our review.

            We deny the
motion for rehearing.

 

 

 

                                                                        Jack
Carter

                                                                        Justice

 

Date:   January 26,
2011                     

 

Do Not Publish

 

 

 











[1]Burnham
appeals from four convictions for aggravated sexual assault of a child and four
convictions for indecency with a child, cause numbers 06-10-00038-CR through 06-10-00045-CR.






[2]Burnham
seeks rehearing of our opinions affirming four convictions of aggravated sexual
assault of a child and four convictions of indecency with a child, cause
numbers 06-10-00038-CR through 06-10-00045-CR.